1

2

3                                                                O

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10

11   PP-ATLANTA JONESBORO, LLC, a   )   Case No. CV 14-02152 DDP (VBKx)
     Georgia limited liability      )
12   corporation; KAWALJIT SINGH,   )   **ORDER DENYING DEFENDANTS' MOTION**
     an individual,                 )   **TO DISMISS PLAINTIFFS' FIRST**
13                                   )   **CAUSE OF ACTION FOR CONVERSION**
                      Plaintiffs,   )   **AND DENYING DEFENDANTS' MOTION TO**
14                                   )   **STRIKE PORTIONS OF COMPLAINT**
          v.                         )
15                                   )   [Dkt. No. 15, 16]
     CITY LIGHTS COMMERCIAL         )
16   LENDING GROUP, INC., a         )
     California corporation; CITY   )
17   LIGHTS MORTGAGE BANK, a        )
     California corporation; CITY   )
18   LIGHTS FINANCIAL EXPRESS,      )
     INC., a California             )
19   corporation,                   )
                                     )
20                      Defendants.  )
     _____)
21

22        Presently before the court is Defendants' Motion to Dismiss

23   Plaintiffs' First Cause of Action for Conversion. (Dkt. No. 16.)

24   Also before the court is Defendants' Motion to Strike Portions of

25   Complaint. (Dkt. No. 15.) Both motions have been fully briefed and

26   are suitable for decision without oral argument. For the reasons

27   stated in this Order, both motions are denied.

28   ///

I.    **Background**

Plaintiffs Atlanta Jonesboro, LLC and Kawaljit Singh ("Plaintiffs") bring the instant complaint against Citylights Commercial Lending Group, Inc., Citylights Mortgage Bank, and Citylights Financial Express, Inc.,(collectively, "Defendants"). Plaintiff Atlanta Jonesboro, LLC is a commercial developer who is in the business of constructing and renovating commercial properties; Plaintiff Kawaljit Singh ("Singh") is Atlanta Jonesboro's president. (Complaint ¶ 24.)

The following alleged facts are drawn from Plaintiffs' Complaint:

In the Spring of 2013, Plaintiffs began discussions with Defendants to provide a commercial loan for a development project at a property located at 6288 Old Dixie Highway in Jonesboro, Georgia (the "Project"). The project was envisioned to construct an assisted living facility. (Id. ¶ 25.)

On May 6, 2013, prior to executing a "Letter of Intent" to execute the loan, the parties agreed that Plaintiffs would provide a refundable deposit of $1 million for the transaction (the "Deposit Agreement"). (Id. ¶ 28.) The Agreement, signed by officers of Citylights Financial, stated:

> Based on the conversation we had this morning, May 6, 2013, . . . I am sending you a letter, as requested, stating if for any reason this loan cannot be made the initial one million dollar deposit will be immediately wired back to Tony's (Kawaljit Singh) account of choice.

(Id.) On or about May 7, 2013, Plaintiffs wired $1 million to the Defendants. (Id. ¶ 29).

Plaintiffs allege that on May 15, 2013, they entered the Letter of Intent with Defendant Citylights Mortgage Bank to provide

a $8,500,000 bridge loan for the Project. (Id. ¶¶ 25-26.) The
Letter of Intent contained conditions of the Bank's funding the
loan and provided that: "Should the Bank not approve the loan
request[,] the processing fee is refundable after application
against Bank's expenses and costs incurred in connection with the
negotiations and processes of this loan request." (Id. ¶¶ 26-27.)

In July 2013, Defendants asserted that Plaintiffs had not
provided accurate information regarding the value of the property
and Plaintiff Singh's assets. (Id. ¶ 30.) However, Defendants
agreed to go forward with the loan under terms different from those
in the Letter of Intent, and Plaintiffs agreed. (Id.)

On August 2, 2013, Defendants sought to modify the terms of
the deal by requiring that Plaintiffs increase their deposit from
$1 million to $2 million. (Id. ¶ 32.) Plaintiffs were unwilling to
accept the new terms and, on August 6, 2013, notified Defendants
that the deal was closed. (Id. ¶¶ 32-33.)

On August 15, 2013, Defendants sent Plaintiffs an invoice in
the amount of $66,578.51 for "costs and expenses" and time spent by
Defendants' employees at a self-prescribed hourly rate. (Id. at ¶¶
34-35.) Defendants asserted that the charges should be applied
against Plaintiffs' remaining deposit of $474,316.45 and that the
only circumstance in which Defendants would return any of the
deposit would be if Plaintiffs "accepted" the $66,578.51 in
charges. (Id.) (The Complaint does not make clear what happened to
the remainder of the $1 million deposit.) Plaintiffs did not accept
the charges. (Id. at ¶ 37.) For the next four months, Defendants
maintained possession of Plaintiffs' funds, including the
$407,737.94 to which Defendants were not making any claims. (Id.

1    In February and March 2014, Plaintiffs again demanded that

2  Defendants return their deposit, or, at a minimum, return the

3  undisputed amount to which they were entitled. (Id. at ¶ 38.)

4  Defendants instead provided a new list of expenses, which increased

5  the amount of the demanded offset from $66,578.51 to $133,493.51.

6  (Id. at ¶ 39.) Plaintiffs disagreed with these new numbers and

7  demanded that Defendants wire the undisputed amount of $340,822.94.

8  (Id. at ¶ 41.) Defendants stated that they would wire the money if

9  Plaintiff provided wiring instructions, and Plaintiffs complied.

10  (Id. at ¶ 42.) Defendants then advised Plaintiffs they had to

11  verify the source of the funds because "there may be a problem if

12  we released the funds to a party that did not initially provide

13  them in the first place." (Id. at ¶ 43.)

14    On February 20, 2013, Plaintiffs agreed to Defendants'

15  request, even though the Deposit Agreement gave Plaintiff Singh

16  "the unfettered right" to choose a wiring account. (Id. at ¶ 44.)

17  Defendants, however, imposed the condition that the parties engage

18  in settlement discussions before the money was wired. (Id. at ¶

19  45.) Plaintiffs refused, but provided Defendants with proof that

20  the original $1 million wire for the deposit came from Plaintiff

21  Singh's account. (Id. at ¶ 45.) Defendants then insisted that

22  Plaintiffs enter into an indemnity agreement to prevent a third

23  party from claiming entitlement to the undisputed deposit monies.

24  (Id. at ¶¶ 46-47.)

25    On February 27, 2014, Plaintiffs told Defendants that, in the

26  interest of expediting matters, they would agree to the request,

27  provided Defendants did not attempt in bad faith to assert that the

28  payment of the undisputed funds would be conditioned upon a mutual

4

1  release of all claims. (<u>Id.</u> at ¶ 48.) On March 11, 2014, Defendants
2  provided an agreement that was not an indemnity agreement, but a
3  proposed full release of all claims. (<u>Id.</u> at ¶ 49.) According to
4  Plaintiffs, Defendants "made it abundantly clear that they were not
5  going to return the deposit monies unless Plaintiffs acceded to
6  their extortion." (<u>Id.</u> at ¶ 50.)

7      Plaintiffs assert one claim for conversion and two claims for
8  breach of contract. (FAC ¶¶ 51-80.)

9

10  **II.   Motion to Dismiss First Cause of Action for Conversion**
11  **A.   Legal Standard**

12      A complaint will survive a motion to dismiss when it contains
13  "sufficient factual matter, accepted as true, to state a claim to
14  relief that is plausible on its face." <u>Ashcroft v. Iqbal</u>, 556 U.S.
15  662, 678 (2009)(quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544,
16  570 (2007). When considering a Rule 12(b)(6) motion, a court must
17  "accept as true all allegations of material fact and must construe
18  those facts in the light most favorable to the plaintiff." <u>Resnick</u>
19  <u>v. Hayes</u>, 213 F.3d 443, 447 (9th Cir. 2000). Although a complaint
20  need not include "detailed factual allegations," it must offer
21  "more than an unadorned, the-defendant-unlawfully-harmed-me
22  accusation." <u>Iqbal</u>, 556 U.S. at 678. Conclusory allegations or
23  allegations that are no more than a statement of a legal conclusion
24  "are not entitled to the assumption of truth." <u>Id.</u> at 679. In other
25  words, a pleading that merely offers "labels and conclusions," a
26  "formulaic recitation of the elements," or "naked assertions" will
27  not be sufficient to state a claim upon which relief can be
28

1  granted. Id. at 678. (Citations and internal quotation marks
2  omitted).

3      "When there are well-pleaded factual allegations, a court
4  should assume their veracity and then determine whether they
5  plausibly give rise to an entitlement of relief." Id. at 679.
6  Plaintiffs must allege "plausible grounds to infer" that their
7  claims rise "above the speculative level." Twombly, 550 U.S. at
8  555. "Determining whether a complaint states a plausible claim for
9  relief" is a "context-specific task that requires the reviewing
10 court to draw on its judicial experience and common sense." Iqbal,
11 556 U.S. at 679.

12 **B.  Discussion**

13     Defendants contend that Plaintiffs' cause of action for
14 conversion should be dismissed because it fails to state a claim.
15 Defendants assert that Plaintiffs' action is a "straightforward
16 breach of contract action" that involves not conversion, but "at
17 most, the alleged breach by defendants of a commercial contract
18 (the Deposit Agreement)." (Motion at 8.) They contend that "[t]he
19 only dispositive issues in this action are the nature and amount of
20 expenses and costs which Defendants may properly deduct from the
21 deposit." (Reply at 4.) According to Defendants, the conversion
22 action is, therefore, "duplicative of the Plaintiffs' breach of
23 contract claims" and "is a disguised tortious breach of contract
24 claim for which there can be no recovery." (Mot. at 2.)

25     The court disagrees. Plaintiffs have sufficiently pled a
26 distinct claim for the tort of conversion. Conversion is generally
27 described as the wrongful exercise of dominion over the personal
28 property of another. Gruber v. Pac. States Sav. & Loan Co., 13

Cal.2d 144, 148 (1939). "The basic elements of the tort are (1) the plaintiff's ownership or right to possession of personal property; (2) the defendant's disposition of the property in manner inconsistent with the plaintiff's property rights; and (3) resulting damages." Fremont Indem. Co. v. Fremont Gen. Corp., 148 Cal. App. 4th 97, 119 (2007). "It is not necessary that there be a manual taking of the property," only "an assumption of control or ownership over the property, or that the alleged converter has applied the property to his [or her] own use." Prakashpalan v. Engstrom, Lipscomb & Lack, 223 Cal. App. 4th 1105, 1135 (2nd Dist. 2014).

Here, Plaintiffs have adequately asserted a claim for conversion. Under the facts alleged in the Complaint, once it became clear that the loan would not go forward, Plaintiffs at least arguably had a right under the Letter of Intent and Deposit Agreement to the return of their deposit, less any processing fees incurred by Defendants. The amount of fees incurred by Defendants is in dispute. But even assuming Defendants were entitled to keep $133,493.51--the largest sum for fees alleged by Defendants-- Plaintiffs would still have been entitled to the remaining $340,822.94 that Plaintiffs claim is not in dispute. (See id. ¶¶ 39-41). Plaintiff's allegation that Defendants nevertheless refused to return this undisputed sum states a claim for conversion. The fact that Plaintiffs also allege that Defendants breached a contract to provide the loan does not preclude a conversion claim with respect to the deposit. See In re James E. O'Connell Co., Inc., 799 F.2d 1258, 1261 (9th Cir. 1986) (affirming district court holding that the defendants' refusal to return plaintiff's deposit

following defendants' anticipatory breach of contract to convey
title to real and personal property constituted conversion);
Schneider v. Bank of Am. N.A., 2014 WL 2118327, at *13 (E.D. Cal.
May 21, 2014) (holding that allegation that the defendants refused
to return to the plaintiffs any portion of funds the plaintiff
entrusted to the defendant for the purpose of crediting the
plaintiff's mortgage account, even after fees the defendant claimed
to be owed were deducted, constituted a viable claim for
conversion).

The facts alleged in Plaintiffs' complaint, therefore, give
rise to a plausible claim for conversion. Whether Defendants'
exercise of dominion over Plaintiffs' property was indeed wrongful
is an issue to be determined not at the pleading stage, but at
trial or on summary judgment.


**III. Motion to Strike**

**A.   Legal Standard**

Rule 12(f) of the Federal Rules of Civil Procedure states that
the "court may strike from a pleading an insufficient defense or
any redundant, immaterial, impertinent, or scandalous matter." Fed.
R. Civ. P. 12(f). Immaterial matter is that which has no essential
or important relationship to the claim for relief or the defenses
being pled. Whittlestone, Inc. v. Handi-Craft Co., 618 F.3d 970,
974 (9th Cir. 2010)(quotation and citation omitted). Impertinent
matter consists of statements that do not pertain, and are not
necessary, to the issues in question. Id. Under Rule 12(f), the
court has the discretion to strike a pleading or portions thereof.

1   <u>MGA Entm't, Inc. v. Mattel, Inc.</u>, 2005 WL 5894689, at *4 (C.D. Cal.

2   2005).

3       "A motion to strike under Rule 12(f) should be denied unless

4   it can be shown that no evidence in support of the allegation would

5   be admissible, or those issues could have no possible bearing on

6   the issues in the litigation." <u>Gay-Straight Alliance Network v.</u>

7   <u>Visalia Unified Sch. Dist.</u>, 262 F. Supp.2d 1088, 1099 (E.D. Cal.

8   2001). Courts must view the pleading under attack in the light most

9   favorable to the pleader, treating as admitted all material facts

10  alleged, and all reasonable presumptions that can be drawn

11  therefrom. <u>California v. United States</u>, 512 F. Supp. 36, 39 (N.D.

12  Cal. 1981). Background information need not be stricken because it

13  provides the court "with a fuller understanding of the dispute."

14  <u>Kaiser Found. Hosp. v. California Nurses Ass'n</u>, No. 11-5588 SC,

15  2012 WL 440634, at *4 (N.D. Cal. 2012).

16  **B.   Discussion**

17      Defendants ask the court to strike two aspects of the

18  complaint. First, Defendants ask that portions of the Complaint

19  referring to "theft" and "extortion" be stricken on the ground that

20  they are "immaterial, impertinent, and scandalous.") (Opp. at 2, 4

21  (citing Compl. ¶¶ 5, 7, 9, 10, 50, 65, 66).) Defendants' request is

22  based on the premise that "[n]one of the issues in this case

23  involve extortion or theft. The parties merely dispute the

24  allowable costs which may be deducted by Defendants from the

25  deposit." (Opp. at 4.) This argument essentially parrots

26  Defendants' arguments in support of their motion to dismiss

27  Plaintiffs' claim for conversion. As explained above, this argument

28  is unsuccessful; Plaintiffs have stated a plausible claim that

1   Defendants have converted the portion of their deposit that is not
2   in dispute. (See, e.g., Compl. ¶ 41.) Plaintiffs have further
3   alleged that, in so doing, Defendants have placed unlawful
4   conditions on the return of such undisputed funds, including
5   Plaintiffs' signing of a complete release of claims against them.
6   (Id. ¶¶ 42-50.) Plaintiffs' use of the phrases "theft,"
7   "extortion," and the like are colorful, but, contrary to
8   Defendants' contentions, they are not unrelated to the allegations
9   at the core of Plaintiff's Complaint. Accordingly, the court will
10  not strike them.
11      Second, Defendants request that Plaintiffs' punitive damages
12  claim, sought in connection with its cause of action for
13  conversion, be stricken from the Complaint. (See Mot. at 6.)
14  Pursuant to California Civil Code 3294(a), a plaintiff may recover
15  punitive damages in actions "for the breach of an obligation not
16  arising from contract, where it is proven by clear and convincing
17  evidence that the defendant has been guilty of oppression, fraud,
18  or malice." Cal. Civ. Code 3294(a). Defendants' request that the
19  reference to punitive damages be stricken appears to depend on the
20  premise that Plaintiffs have stated only a cause of action for
21  breach of contract. (See Reply at 4.) However, as discussed above,
22  Plaintiff cause of action for conversion will survive this motion
23  to dismiss. Unlike a breach of contract claim, punitive damages may
24  be "properly awardable in an action for conversion, given the
25  required showing of malice, fraud or oppression." Haigler v.
26  Donnelly, 18 Cal. 2d 674, 681, 117 P.2d 331 (1941); see also Haines
27  v. Parra, 193 Cal. App. 3d 1553, 1560 (Ct. App. 1987); Prof'l
28  Seminar Consultants, Inc. v. Sino Am. Tech. Exch. Council, Inc.,

10

727 F.2d 1470, 1473 (9th Cir. 1984). Plaintiffs' Complaint is not so lacking in allegations suggesting malice, fraud or oppression as to make such a showing implausible. Accordingly, the court will not strike the prayer for punitive damages from the Complaint.

**IV. Conclusion**

For the reasons set forth herein, Defendants' Motion to Dismiss Plaintiffs' First Cause of Action for Conversion (Dkt. No. 16) is DENIED. Defendants Motion to Strike Portions of Complaint (Dkt. No. 15.) is also DENIED.


IT IS SO ORDERED.



Dated: July 15, 2014

DEAN D. PREGERSON
United States District Judge